UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

DORINA SCHACHTER AND THEODORE
SCHACHTER AS AGENT FOR DORINA
SCHACHTER,

                Plaintiffs,                3:18-cv-00953 (JAM (RMS)

V.

SUNRISE SENIOR LIVING MANAGEMENT,
INC., et al,

                Defendants.

---

## AFFIDAVIT OF ROBIN MAHAN

I, Robin Mahan, being first duly sworn upon oath, depose and state that if I were called upon at the time of trial, I could competently testify to the following:

1. I served as the Coordinator for the Reminiscence Unit at Sunrise of Stamford from date to date. I have personal knowledge of the facts contained herein and the same are true and correct to the best of my knowledge.

2. I am informed that a lawsuit has been filed relating to Dorina Schachter's residency at the Sunrise of Stamford assisted living community during certain dates in 2016 and 2017.

3. I am not a party to the lawsuit, nor do I have any financial or other interest in the lawsuit.

4. During the period that I worked at Sunrise of Stamford, the caregivers in the Reminiscence Unit kept a "Communications Log."

5. The Communications Log was kept on paper. It was a way for caregivers to communicate about a resident's needs and requirements with all of the other caregivers on duty (CNAs, LPNs, RNs) in the department, as well as the supervisors of those caregivers.

6. The Communications Log included documentation of care and services rendered, including assisted living aide notes which have been reviewed by the registered nurse.

7. Typically, Certified Nurses Assistants (CNAs) made entries into the Communications Log during or at the end of their shift.

8. Before starting a shift, a CNA was supposed to check the Communications Log to see what each of their assigned residents needed.

9. As part of my training I was told that the Communications Logs were to be destroyed after no more than thirty days.

10. There was a room at Sunrise of Stamford which was filled with old files.

11. Sunrise had an instruction sheet ("Instruction Sheet") which we were told to follow to determine how long you needed to keep something.

12. Among the documents we reviewed were nursing and financial records.

13. Under the direction of Jaclyn Robbins, the Executive Director, Irina Argust, the Assisted Living Coordinator, some nurses and I, along with Jaclyn Robbins, were among those who went through the boxes and placed some in boxes for shredding and left others in boxes to be kept.

14. The shredding was not done on site. We placed documents to be shredded in special boxes marked for shredding.

15. According to the Instruction Sheet, somethings were to be kept for maybe five years and some for perhaps ten years and some not at all.

16. Mr. Schachter contacted me by text after his mother had been found on the floor. He was very upset. I was in training offsite at the time.

17. I informed Jaclyn Robbins and nursing about my communications with Mr. Schachter.

18. During the course of more than one conversation, Jaclyn instructed me not to have further contact with Mr. Schachter.

FURTHER AFFIANT SAYETH NOT.

*Robin Mahan*

Robin Mahan

Dated AND NOTARIZED: January 6, 2020

*Michael Ferrari*
Commission expires 8-31-2025