UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------x
                      :

DORINA SCHACHTER          :          3: 18 CV 953 (JAM)
                     :

v.                      :
                     :

SUNRISE SENIOR LIVING   :          DATE:  JAN. 30, 2020
MANAGEMENT INC. ET AL.  :
                     :
---------------------------------------------------x

## RULING ON DISCOVERY (DOC. NOS. 97-98, 104-105, 113-15)

I.     **BACKGROUND**

On March 21, 2019, this case was removed to the United States District Court for the Eastern District of New York from Queens County Supreme Court in Queens, New York, and transferred to this Court on June 5, 2018.  Dorina Schachter, was injured when she was a resident at Sunrise of Stamford.  She, through her son, Theodore Schachter, as her agent, brought this action against defendants Sunrise Senior Living Management Inc. ["SSLMI"], Sunrise Senior Living Services Inc. ["SSLSI"], Jaclyn Robbins, AL I/Stamford Senior Housing, LLC ["AL"], and Welltower, Inc., alleging (1) negligence, (2) negligent infliction of emotional distress, (3) intentional infliction of emotional distress, (4) breach of contract (against all defendants except Ms. Robbins), (5) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), (6) breach of the Patients' Bill of Rights, Conn. Gen Stats § 19a-550, and (7) willful and/or reckless disregard for Mrs. Schachter's safety and rights.  (Doc. No. 62).

On June 21, 2019, the defendants filed a motion to dismiss all claims against Ms. Robbins, Welltower, and SSLSI, to dismiss the CUTPA and violation of the Patients' Bill of Rights claims brought against the remaining defendants, and to dismiss the breach of contract claim against all

parties other than SSLMI and AL. (Doc. No. 65; *see* Doc. Nos. 77-78, 80, 88). The motion is pending before United States District Judge Jeffrey A. Meyer.

On November 8, 2019, the parties sought an extension of the scheduling order. (Doc. Nos. 90-91). The Court (Meyer, J.) granted the extension and directed the parties to contact the Court if they had any discovery disputes requiring attention. (Doc. No. 92).

On December 11, 2019, the Court held a telephonic discovery conference. After the conference, the Court issued the following order:

> In accordance with the parties' agreement, the Court hereby ORDERS defendants to produce any records related to the job-related training, discipline, and performance of employees Mabel McKay, Ibrahim Abdul, Dorothy Lee, and Marie Phillippe during the period of January 2016 to the date of the incident on January 28, 2017, including any such records created after the incident that reflect on the employees' activities from January 1, 2016, to January 28, 2017. The parties are encouraged to confer to resolve any concerns that may arise as to the protection of any non-relevant, private information of the named employees that may be within such records and subject to redaction.

(Doc. No. 94).

Seven days later, the parties contacted the Court again "to advise that they have multiple discovery disputes." (Doc. No. 95). The Court referred this case to the undersigned for resolution of the discovery disputes and to "modify the case scheduling order as necessary in light of the parties' disputes." (*Id.*; *see also* Doc. No. 99). At the time, the fact discovery deadline was January 14, 2020. (Doc. No. 92).

Pursuant to this Court's Order, on December 26, 2019, the parties filed simultaneous letter briefs detailing the current discovery disputes (Doc. No. 97 ["Def. Letter Br."]; Doc. No. 98 ["Pl. Letter Br."], and they filed responsive briefing on January 3, 2020. (Doc. No. 104 ["Pl. Response"]; Doc. No. 105 ["Def. Response"]). On January 3, 2020, the plaintiff filed a motion for a telephonic

discovery conference (Doc. No. 101), which the Court granted (Doc. No. 102); that conference was held on January 6, 2020.  (Doc. Nos. 103, 107).

Following the conference, the Court entered two orders.  (Doc. Nos. 108-09).  In the first order, the Court extended the fact discovery deadline to March 14, 2020.  (Doc. No. 108). Additionally, counsel agreed to file any supplemental briefing regarding the outstanding discovery dispute by January 13 and January 16, 2020.  (*Id.*).

In the second order, the Court addressed the plaintiff's request that the Court direct the plaintiff to "provide records obtained from an investigation conducted by the Connecticut Department of Public Health ["DPH"] into the incident pursuant to a public records request . . . because the State of Connecticut erroneously provided documents relating to a patient not relevant to this matter."  (Doc. No. 108).  Specifically, the Court ordered:

> To the extent these documents are covered by HIPAA, HIPAA permits the disclosure of protected health information in the course of a judicial proceeding in response to a court order, provided that the covered entity discloses only the protected health information expressly authorized by such order. 45 C.F.R. § 164.512(e)(1)(i). The plaintiffs represent to the Court that the records at issue are DPH records obtained from a Freedom of Information Act request, and that while they intend to use the documents which relate to the parties in this case, they do not seek to use the information regarding the unrelated patient. (Doc. No. 98 at 5). The defendants represent that they, too, submitted their own public records request to DPH, and have been informed that the records will likely be produced . . . in February 2020. (Doc. No. 97 at 6). The plaintiffs shall, forthwith, produce to the defendants the documents obtained from DPH which are relevant to this matter and relate to the parties in this case.

(*Id.*).

On January 13, 2020, the plaintiff filed her supplemental response with multiple exhibits in support (Doc. No. 113 ["Pl. Supp. Response"]), and three days later, the defendants filed their supplemental response with exhibits in support (Doc. No. 114 ["Def. Supp. Response"]), followed by a clarification of a statement made in their supplemental response.  (Doc. No. 115).

II.     DISCOVERY DISPUTES

     A.     LEGAL STANDARD

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The proportionality determination limits the scope of discovery by "considering the importance of the issues at stake[,]" the "amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense . . . outweighs the likely benefit" of the discovery sought. FED. R. CIV. P. 26(b)(1).

     B.     DISCUSSION

          1.     SCOPE OF DISCOVERY

               a.     INVESTIGATION INTO THE INCIDENT

The plaintiff has requested records relating to (1) the interviews of state members by the State of Connecticut Department of Health; (2) documents from defendant Robbins, related to the Incident, and documents regarding her supervision of patient/resident care; (3) documents related to the State of Connecticut Department of Public Health Facility Licensing & Investigations Section Reportable Event Form, completed by Jaclyn Robbins on January 28, 2017; (4) the remaining pages related to a letter dated November 27, 2017 to Calla Schrull, Supervisor of Assisted Living Services, Sunrise at Stamford, which references an attachment, the related response or information disputing the findings in the letter, and documents related to the plan of correction referenced in the privilege log;[1] (5) complete production of documents related to SSLM100003, which purports to set forth the specific violations found during visits to Sunrise of

_____

[1] The defendants have agreed to produce the plan of correction which was withheld as privileged. (Def. Response at 11).

Stamford on June 14, 16, 19 and 20; (6) the documents attached and related to SSLMI000004, which is an unsigned letter from the Facility Licensing and Investigations Section, State of Connecticut Department of Public Health to Jaclyn Robbins, dated January 25, 2018; (7) the underlying response referenced in SSLMI000005, which is an email from Robbins to an investigator for the State of Connecticut; (8) documents identifying Robbins as the custodian; (9) documents related to the filling of vacancies or anticipated vacancies at the Dementia Care Unit; and, (10) documents related to the reporting of the incident at issue in this case. (Pl. Letter Br. at 8-11).

In response, SSMLI contends that it has produced, or identified as privileged, all known documents in its possession or control related both to an internal investigation into the incident and to the Connecticut Department of Health's investigation into the incident. (Def. Response at 8).

The Court orders that, to the extent there are additional documents, including the remaining pages related to many of the documents produced to date, SSMLI shall supplement its discovery response on this requested information on or before February 13, 2020, or when such documents are discovered. *See* FED. R. CIV. P. 26(e).

b.  DEFENDANTS' REQUESTS REGARDING RECORDS OBTAINED FROM THE STATE OF CONNECTICUT

In their initial brief, the defendants sought an order compelling the plaintiff to respond to their request for "[a]ny and all writings or documents in your possession reflecting any investigations conducted by state or federal agencies within United States or law enforcement within the United States regarding THE RESIDENT." (Def. Letter Br. at 5). In light of this Court's Order, dated January 7, 2020 (Doc. No. 109), this request is moot.

2. <u>DISCOVERY RELATED TO PARTIES AND CLAIMS THAT ARE THE SUBJECT OF THE PENDING MOTION TO DISMISS</u>

The defendants have filed a motion to dismiss, *inter alia*, the CUTPA[2] and Patients' Bill of Rights claims, and that motion is currently pending. The defendants claim that it is improper for the plaintiff to seek discovery on these claims when they are not plausibly alleged. (Def. Letter Br. at 3). In addition, the defendants are seeking dismissal of all claims against Welltower and, as a result, have refused to schedule the Welltower 30(b)(6) deposition and have objected to discovery served on Welltower in light of the pending motion to dismiss. (Def. Letter Br. at 15). Finally, the defendants refuse to produce documents relating to the negligence or breach of contract claims or permit a 30(b)(6) deposition on that topic until the Court rules on their motion to dismiss.

To date, Welltower is a named defendant. While the defendants vociferously object to discovery served on Welltower on grounds that Welltower, through an affidavit, has refuted all of the plaintiff's allegations against it, the Court, in ruling on discovery, cannot and should not pass judgment on whether Welltower should be dismissed as a party. The defendants have not moved to quash the deposition, nor have they moved for a protective order. The deposition may go forward, and Welltower shall respond, or properly object, to discovery.

As to the defendants' blanket refusal to produce documents related to other claims that are challenged in the motion to dismiss, the Court similarly concludes that their objection is not well founded. The defendants may not just ignore discovery served in this case. A motion to dismiss does not automatically stay discovery, *United Rentals, Inc. v. Chamberlain*, No. 3:12-cv-1466 (CSH), 2013 WL 6230094, at *3 (D. Conn. Dec. 2, 2013), and the defendants have neither moved for such a stay, nor moved for a protective order. *See Hong Leong Fin. Ltd. (Singapore) v. Pinnacle*

---

[2] The defendants argue that CUPTA does not apply to the medical malpractice claims at issue in this case, and that the Patients' Bill of Rights covers only nursing home facilities, residential care homes and chronic disease hospitals, not an assisted living facility such as SSLMI.

*Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (discussing the circumstances in which, upon motion, a pending motion to dismiss may constitute good cause for staying discovery). Accordingly, to date, these claims are subject to discovery.

      3.    <u>ESI DISCOVERY</u>

      a.    <u>COST-SHIFTING AND FAILURE TO PRESERVE</u>

The incident at issue in this case occurred on January 26, 2017. The plaintiff alleges that, in the evening of January 26, 2017, defendant Jaclyn Robbins, the facility's Executive Director, contacted Mr. Schachter to inquire as to when his mother would return to the facility. He informed her that his mother would not be returning to Sunrise. This communication leads to the reasonable conclusion that, as of January 26, 2017, the parties anticipated litigation. Although the defendants argue that Mr. Schachter had a reputation of threatening litigation and that there was no duty to preserve until SSLMI was put on actual notice of the claim, the defendants' own actions contradict this position. The defendants agree that this date is relevant in that they produced a privilege log in which a document prepared on January 26, 2017 was withheld because it was prepared in anticipation of litigation. Additionally, by January 28, 2017, the State of Connecticut had opened a file regarding Mrs. Schachter because defendant Sunrise had completed a Reportable Event Form. (Doc. Nos. 113-3, 113-4).

The party having control over the evidence has an obligation to preserve such evidence, and that obligation "'usually arises when a party has notice that the evidence is relevant to litigation . . . but also on occasion in other circumstances, as for example, when a party should have known that the evidence may be relevant to future litigation.'" *Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 377 (D. Conn. 2007) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001)). The obligation to preserve evidence is governed by Rule 37(f) of the Federal Rules of

Civil Procedure which allows for a "good faith exception" for failing to preserve electronically stored information: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." FED. R. CIV. P. 37(f). The Commentary to that Rule, however, indicates that, "[w]hen a party is under a duty to preserve information because of pending or reasonably anticipated litigation, intervention in the routine operation of an information system is one aspect of what is often called a 'litigation hold.'" FED. R. CIV. P. 37(f) advisory committee's note to 2006 amendment. The defendants may not "take advantage of the good faith exception," if they did not act "affirmatively to prevent the system from destroying or altering information, even if such destruction would occur in the regular course of business." *Norwalk Cmty. College*, 248 F.R.D. at 378.

In the absence of a litigation hold, the defendants would not be able to take advantage of the good faith exception in Rule 37(f). After parsing through the detailed letters from the parties, however, the Court finds that it is premature to conclude that documents have, in fact, been destroyed. For example, the plaintiff asserts that she has not received all of the documents in response to her request for data from Yardi, a software program used to store billing and medical record information. (*See* Pl. Letter Br. at 12). Yet, the defendants represent that they have produced all known "Yardi records for Mrs. Schacter" which consist of more than 200 pages of documents regarding Mrs. Schachter. (Def. Letter Br. at 7; Def. Response at 1-2). The plaintiff is seeking staffing records, which were allegedly destroyed,[3] Individual Service Plans, Monthly Resident Client Service Plan of Care for six months in 2016, and January 2017, progress notes, and staff daily records. (Pl. Letter Br. at 6-7). The defendants posit that the relevant documents

---

[3] As discussed below, the defendants claim they have produced staffing records. (*See* Section II.B.7.d. *infra*).

are the progress notes, which have been produced, and that "[t]here is no evidence at this point that any missing records were destroyed [as] SSMLI is still searching for missing records." (Def. Response at 5). Additionally, the defendants counter that there is no document referred to as a "Monthly Resident Client Service Plan of Care[,]" but that, to the extent the plaintiff is referring to the Resident (Client) Service Plan of Care, those documents were stored in Yardi and were produced, and the document for January 2017 was produced. (Def. Response at 7). Similarly, according to the defendants, the progress notes were stored in Yardi and were produced. (*Id.* at 8).

The defendants admit that some documents may have been destroyed pursuant to the routine destruction of old records. (Def. Letter Br. at 16). Specifically, the defendants acknowledge that "[t]he only records that are definitively known to be missing are Care Manager ISPs and staff schedules from 10 days prior to the incident." (*See* Def. Response at 6). Additionally, SSMLI concedes that the Individual Service Plans for a number of dates are missing and "may have been destroyed." (Def. Response at 7). SSLMI, however, "continues to look for the documents and agrees that if records can be located, they will be produced to the plaintiff." (*Id.*; *see also* Def. Response at 5-6).

SSMLI must continue to supplement its responses as documents, including staff daily records, become available. *See* FED. R. CIV. P. 26(e). Additionally, for the records that SSMLI has identified as missing, SSLMI "agreed that it would produce schedules from 10 days prior to the incident, or an adequate substitute if schedules were unavailable[.]" (Def. Response at 7).

The Court orders that, on or before February 13, 2020, the defendants shall produce the schedules, or the reports that SSMLI offers as a substitute, and the defendants shall continue to supplement its responses. If, after the conclusion of a diligent search and supplementation of its

responses, there are documents that have been destroyed, the defendants must identify those documents to the plaintiff, and the plaintiff may file an appropriate motion to address her claim regarding the defendants' failure to preserve.

b.    SEARCH TERMS

The emails have been archived and preserved (Def. Response at 8; Def. Supp. Response at 6),[4] but SSLMI represents that "it requires further information to provide a cost estimate to retrieve archived emails[.]" (Def. Supp. Response at 6). As SSMLI explained, "[t]he process of searching through SSLMI's extensive archived [email] system for the documents requested would require restoring distinct tape sets of the entire [email] system. . . .  The number of tape sets that need to be restored depends on how many restore dates" are searched, and the "number of tapes to restore affects how much time the project will take and how much data needs to be sifted through.  An estimate of the cost of the project and the time to complete it can be provided once [the] [p]laintiff provides the detailed parameters for the search he is requesting."  (Def. Letter Br., Ex. 17 ¶¶ 7-8).  Additionally, "[o]nce the data has been restored, extracted, and de-duplicated, the data would need to be indexed and keyword searched for responsive [emails], which would usually involve hourly costs above and beyond the cost of restoring data from the backup tapes and extracting [email] data from each tape."  (*Id.* ¶ 12).  The parties dispute the search terms, and the plaintiff has yet to provide the range of emails the plaintiff wants to restore.

"[T]he best solution in the entire area of electronic discovery is cooperation among counsel."  *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009).  Thus, "[i]deally, the parties should agree on the search methods, including

---

[4] Defense counsel represents "that some emails may be archived, rather than immediately accessible, because they may have been deleted at some point in the past, and therefore are not readily accessible in someone's inbox." (Def. Response at 5).

search terms or concepts." *Saliga v. Chemtura Corp.*, No. 3:12-cv-832(RNC), 2013 WL 6182227, at *3 (D. Conn. Nov. 25, 2013).[5]

The defendants' suggestion that the plaintiff's demands must "specify file name and exact date, rather than by topic and date range[]" is not practical as file names are not known to the plaintiff. (Pl. Letter Br. at 5). The plaintiff, however, must provide the parameters and proposed terms to assist the defendants in this search. (*See* Def. Supp. Response at 6). The plaintiff represents that she will "again provide search terms on an expanded basis." (Pl. Supp. Response at 13). Counsel shall work together to refine targeted search terms by topic, within the relevant date range.[6]

### 4.   SPOLIATION

To the extent the plaintiff argues that spoliation has occurred, the plaintiff may move for appropriate sanctions.

### 5.   RULE 30(b)(6) DEPOSITIONS

In light of the defendants' acknowledgment that documents have been destroyed as part of a routine policy, the plaintiff may inquire, at the SSLMI 30(b)(6) deposition, about its document destruction policy and how the policy was implemented from January 1, 2016 through the present.

---

[5] The defendants represent that SSLMI has produced some emails in response to searches for the terms: "Dorina" and "Schachter" and common misspellings of those names. (Def. Letter Br. at 6-7).

[6] If the parties reach an impasse, they shall contact the Court for a telephonic conference. As Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure states: "A party need not provide discovery of electronically stored information from sources that the party identified as not reasonably accessible because of undue burden or cost." If the defendants can make such a showing, they, of course, may file an appropriate motion under Rule 26(b)(2)(B). Similarly, the plaintiff may move to compel such discovery and may seek to shift the cost of such production. The cost shifting issue is not ripe until the parties identify the parameters of the search and obtain an estimate of the cost. The parties' arguments, to date, are premature.

The defendants identify several other topics they find objectionable. (Def. Letter Br. at 8-10).

   a.   TOPIC NO. 1: THE RELATIONSHIP BETWEEN AND AMONG WELLTOWER, ITS AFFILIATES, RED FOX, THE SUNRISE DEFENDANTS AND THEIR PARENT COMPANIES AND SUBSIDIARIES.

SSMLI responded that the request is vague because Sunrise is not clearly defined and the definitions of Welltower and Red Fox are also vague and unclear. Additionally, the request is overbroad, unlimited in time and scope and seeks information related to separate corporate entities, some of which are not parties to this litigation.

The plaintiff defined Welltower and Red Fox in its Notice of Rule 30(b)(6) Deposition, and Welltower is a named defendant in this case. This topic, as written, however, requests information not proportional to the needs of the case. The plaintiff shall tailor her topic request to limit the scope to the time period relevant to the events in this litigation. SSLMI's 30(b)(6) witness shall testify as to the Sunrise defendants, its subsidiaries and parent company as well as to its knowledge regarding the entities involved in the operation of the Sunrise of Stamford community. Additionally, the plaintiff can inquire into the relationship between the Welltower defendant and the Sunrise defendants.

   b.   TOPIC NO. 4: SSLMI'S RIDEA COMPLIANCE AND ACTIVITIES.

The plaintiff has clarified that the parties redrafted this topic to read: "SSLMI's role in Welltower's senior housing structured under RIDEA." (Pl. Response at 11). To the extent that the parties cooperatively redrafted this topic, SSLMI's designee shall testify to regarding this amended request.

c. REDRAFT OF TOPIC NO. 5: TOPIC 5 SEEKS INFORMATION RELATING TO SSLMI'S EMPLOYMENT RECORDS, EMPLOYEE TRAINING, PERSONNEL AND HIRING, MAINTENANCE OF MEDICAL RECORDS FOR PATIENTS, BUSINESS DOCUMENTS AND FINANCIAL RECORDS, PURCHASING AND PROCUREMENT, COMPUTER HARDWARE AND SOFTWARE SYSTEMS, MANAGEMENT AND OPERATION OF THE PROPERTIES, AND LIAISON WITH WELLTOWER

SSLMI appropriately objects to this request as overly broad, unduly burdensome, and not limited in time. (Def. Letter Br. at 9). SSLMI's 30(b)(6) witness shall testify as to the policies and procedures at Sunrise of Stamford related to clinical care, maintenance of medical records, employee training, employee records, personnel and hiring, and Welltower's relationship with SSLMI in 2016 and 2017, including the time period that Mrs. Schacter was a resident. Additionally, the witness shall testify as to a financial incentive structure relating to placement in the dementia unit at Sunrise of Stamford, if any exists. The remaining financial and budget information requested is confidential and proprietary, and any request relating to an ability to pay a judgment is premature at this stage of the litigation.

d. TOPIC NO. 6: ANY INVESTIGATIONS OR FOLLOW UP OF WHAT HAPPENED TO DORINA SCHACHTER.

SSLMI's 30(b)(6) witness shall testify as to the non-privileged aspects of the incident involving Dorina Schachter.

e. TOPIC NO. 8: MANAGEMENT AGREEMENTS AND OPERATING AGREEMENTS FOR WELLTOWER PROPERTIES INCLUDING INCENTIVE STRUCTURES AND PERFORMANCE METRICS.

As discussed above, although Welltower's involvement in this case is the subject of a motion to dismiss, to date, Welltower is a named defendant. The plaintiff has limited this request to 2016 and 2017. The deponent shall testify as to Welltower's relationship with Sunrise of

Stamford, and, to the extent any agreements include incentive structures and performance structures, the deponent shall testify as to the provisions of such agreements that existed between Welltower and Sunrise of Stamford during the period of 2016 and 2017.

      f.      TOPIC NO. 9: THE MANNER IN WHICH STAFFING LEVELS IN THE "RU" ARE SET.

Although this request was not limited in time, the plaintiff has agreed to limit this request to 2016 and 2017. The SSLMI 30(b)(6) witness shall testify regarding staffing levels in the Reminiscence Neighborhood at Sunrise of Stamford, including how they were set, from 2016 to 2017, including, but not limited to, the time that Mrs. Schachter resided in the Reminiscence Neighborhood at Sunrise of Stamford.

      g.      TOPIC NO. 10: JOB DESCRIPTIONS FOR "RU" EMPLOYEES & THE EXECUTIVE DIRECTOR.

The SSLMI 30(b)96) witness shall testify regarding this topic as to the job descriptions for "RU" employees and the Executive Director, in effect when Mrs. Schachter resided at the Reminiscence Neighborhood at Sunrise of Stamford.

      h.      TOPIC NO. 11: SUNRISE CAPTIVE, SUNRISE SENIOR LIVING INSURANCE AND ALL SUNRISE LIABILITY POLICIES.

Rule 26 (a)(1)(A)(iv) requires the disclosure of an insurance agreement under which "an insurance business may be liable to satisfy part or all of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." FED. R. CIV. P. 26(a)(1)(A)(iv). SSLMI shall testify as to the insurance information applicable to the entities named as defendants. (*See* Section II.B.8. *infra*).

      6.      PLAINTIFF'S MENTAL HEALTH RECORDS

The defendants served a subpoena on Adult Mind & Body Wellness, LLC a/k/a Judith Stoddard, Dorina Schachter's social worker in 2016 (Def. Letter Br., Ex. 8), for Mrs. Schachter's mental health records because the plaintiff has claimed that she suffered a cognitive decline since the incident. (Def. Letter Br. at 10). An attorney for Ms. Stoddard informed defense counsel that he would not produce the records without an authorization from Mrs. Schachter. (*Id.*).

Mrs. Schachter's mental state is at issue in this case, and her preexisting mental state is relevant. The disclosure of such records, however, should be narrowly tailored to the claims at issue, which involve an allegation that the plaintiff's mental state declined as a result of the defendants' actions. *See Buell v. Hughes*, No. 3:07 CV 468(DJS), 2008 WL 11375421, at *1 (D. Conn. Jan. 1, 2008); *see Williams v. Gillette Co.*, No. 3:02 CV 2213(WWE), 2004 WL 717173, at *1 (D. Conn. Mar. 24, 2004) (noting that "there is no privilege as to communications relevant to the mental or emotional condition of the patient in any proceeding in which the patient relies on the condition as an element of the patient's claim or defense."). The defendants argue that medical records indicate that Mrs. Schachter began experiencing symptoms of memory decline as early as 2013. Accordingly, the plaintiff shall execute an authorization for the production of Mrs. Schachter's mental health records from Adult Mind & Body Wellness, LLC, from 2013 to the present.

7.      PLAINTIFF'S RULE 34 REQUESTS[7]

---

[7] In addition to the foregoing topics that were the subject of the parties' letter briefs, responses and supplemental responses, the plaintiff, in her supplemental response, addresses an additional *fifty-five* "[u]nresolved [d]iscovery [d]emands." (Pl. Supp. Response at 13-22). During the conference call held on January 6, 2020, the Court afforded the parties an opportunity to file supplemental briefing on the issues *already* pending before the Court. (*See* Doc. No. 108). The Court will not entertain the plaintiff's attempt to re-start briefing on discovery disputes not addressed in the voluminous letter briefs before the Court as of that January 6, 2020 telephonic conference.

Additionally, on January 29, 2020, the parties filed additional briefing addressing discovery, and arguing over what discovery is permitted between January 14, 2020 to March 14, 2020. (Docs. Nos. 119-20). Later the same day, the defendants filed a Motion to Strike the plaintiff's filing on grounds that their brief includes "extensive arguments on issues that the Court did not ask to be briefed." (Doc. No. 121). To the extent that the plaintiff's briefing raises

a.    PERSONNEL RECORDS

Individually identifying information contained in personnel files may not be disclosed without written authorization of an employee. CONN. GEN. STAT. § 31-128f. Such information, however, may be disclosed under certain exceptions, including pursuant to a judicial order. As discussed above, on December 11, 2019, the Court (Meyer, J.) held a telephonic discovery conference following which, the Court ordered:

> In accordance with the parties' agreement, the . . . defendants [shall] produce any records related to the job-related training, discipline, and performance of employees Mabel McKay, Ibrahim Abdul, Dorothy Lee, and Marie Phillippe during the period of January 2016 to the date of the incident on January 28, 2017, including any such records created after the incident that reflect on the employees' activities from January 1, 2016, to January 28, 2017. The parties are encouraged to confer to resolve any concerns that may arise as to the protection of any non-relevant, private information of the named employees that may be within such records and subject to redaction.

(Doc. No. 94). Thus, SSLMI stipulated to a court order to produce personnel file records for the time period of January 1, 2016 to the date of the incident, related to job related evaluations, training and discipline for the four employees identified as directly involved in the incident at issue.

The defendants have indicated that they will stipulate to a similar court order to produce additional records if other employees are identified. (Def. Letter Br. at 11). The plaintiff "remain[s] willing to work with [the] [d]efendants to provide a list of employees whose records are sought, and to obtain the Court order [the] [d]efendants claim they require for their own protection[.]" (Pl. Supp. Response at 14). The parties shall meet and confer to resolve this issue; a proposed stipulated order shall be submitted to the Court by February 13, 2020.

---

additional discovery disputes beyond those discussed in the initial briefing and addressed by this Ruling, the defendants' Motion to Strike (Doc. No. 121) is GRANTED.

The parties' extensive briefing reflects an inability to meet and confer in a productive manner. The parties are directed to address outstanding discovery in a cooperative manner. If additional disputes arise, the parties shall contact Chambers for a telephonic discovery conference before filing additional briefing.

### b.   BUDGET AND FINANCIAL RECORDS

The defendants object to the production of budget and financial records of SSLMI because the plaintiff is seeking to discover assets prior to judgment, and because the records are confidential and proprietary. (Def. Letter Br. at 12).  The plaintiff claims that her demands "are directly relevant to their causes of action[,]" and, "[a]s it happens, [the] [p]laintiff's demands would not yield information regarding internal information about [the] [d]efendants' assets or cash positions, and no demand is structured or intended to determine whether [the] [d]efendants' can pay an award." (Pl. Letter Br. at 11). Additionally, the plaintiff seeks the management agreement between SSLMI and A1 I/Stamford Senior Housing, LLC on the ground that defendant "Welltower has exerted control over Sunrise of Stamford through the Management Agreements that are used by SSLMI in the management of Sunrise of Stamford among other properties."  (Def. Response at 12).  The defendants object to this request because the plaintiff has "either made up these claims or has failed to disclose the evidence that supports the claims[,]" and this is "just another attempt by the plaintiff[s] to prematurely gather financial information about the defendants."  (*Id.* at 12-13).

The plaintiff's requests seek specific financial information, and much of the information sought in the current requests may be both confidential and proprietary.  Additionally, the plaintiff's requests are not proportional to the needs of the case.  FED. R. CIV. P. 26(b)(1).  On or before February 13, 2020, the plaintiff shall serve revised requests tailored to seek information regarding the quality or competency of the staff, and whether a bonus structure existed for transferring patients to the dementia unit.

### 8.   INSURANCE INFORMATION

Rule 26 (a)(1)(A)(iv) requires the disclosure of an insurance agreement under which "an insurance business may be liable to satisfy part or all of a possible judgment in the action or to

indemnify or reimburse for payments made to satisfy the judgment." FED. R. CIV. P. 26(a)(1)(A)(iv). SSLMI has disclosed that it has a $1 million self-insured retention, and a $10 million excess policy. Additionally, SSLMI has agreed to produce responsive information to the plaintiff's request of whether this is an eroding policy and how much is left on the policy. (Def. Letter Br. at 12-13). SSLMI shall produce its supplemental response on or before February 13, 2020.

9. <u>STAFFING</u>

The plaintiff generally requests all documents "related to" the staffing procedure at Sunrise at Stamford. This request is impermissibly vague as written. The plaintiff narrowed her request to "documents relating to staffing while Mrs. Schachter was a resident of Sunrise of Stamford." (Pl. Response at 15). SSLMI produced documents explaining that staffing numbers at Sunrise of Stamford are adjusted based on resident needs. To the extent that SSLMI has not done so already, on or before February 13, 2020, SSLMI shall produce documents showing "the target staffing numbers" while Mrs. Schachter was a resident of the Assisted Living facility and the Reminiscence Unit. (*See* Def. Letter Br. at 13).

10. <u>IDENTFYING THE FACTS AND DOCUMENTS SUPPORTING THE PLAINTIFF'S ALLEGATIONS IN THE AMENDED COMPLAINT</u>

To the extent the plaintiff has not done so already, on or before February 13, 2020, she shall describe the facts and documents upon which they rely to support the allegations in the Amended Complaint.

11. <u>PRIVILEGED MATERIALS AND THE PRIVILEGE LOG</u>

The defendants are withholding the following documents as privileged, attorney-client communications protected from disclosure by the peer review privilege: (1) an internal investigation report regarding the incident, created on January 26, 2017; (2) a Resident/General

Liability Incident Report concerning the incident, dated January 26, 2017; (3) a general liability report form, created on January 28, 2017, which was used to communicate incidents to the legal department; (4) a Resident/General Liability Incident Report concerning a separate incident on November 6, 2016; and, (5) a Resident/General Liability Incident Report concerning a separate incident, created on August 26, 2016. The defendants, however, have agreed to produce the plan of correction that was originally withheld as privileged.  (Def. Response at 11).

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining providing legal assistance."  *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  The party asserting that discovery is barred by the Connecticut medical peer review statute bears the burden of proving facts that establish the applicability of the statute to the documents the party seeks to withhold. *Babcock v. Bridgeport Hosp.*, 251 Conn. 790, 847-49, 742 A.2d 322 (1999). "Confidentiality properly attaches to peer review documents only when the moving party has provided sufficient information to enable the court to determine that each element of the privilege is satisfied . . . . A failure of proof as to any element of the privilege causes the claim of privilege to fail." *Id.* at 828-29 (citation and internal quotations omitted). "[A]lthough a statutory privilege must be applied so as to effectuate its purpose, it is to be applied cautiously and with circumspection because it impedes the truth-seeking function of the adjudicative process." *Id.* at 819.  The defendants must show that the "documents and discussions at issue constituted the proceedings of a medical review committee, and that the committee was specifically conducting a peer review proceeding."  *Kristian Best, Adm'x of the Estate of Rohan K. Williams v. CCWC Prof'l Practice Group, LLC dba Connecticut Childbirth & Women's Ctr.*, No. DBDCV186025335S, 2019 WL 6999125, at *3 (Conn. Super. Ct. Nov. 21, 2019).

In this case, like in *Babcock*, the defendants made conclusory statements without any evidentiary showing that the reports and investigations meet the statutory definition of a peer review proceeding. The defendants claim that the incident reports and internal investigations are reviewed by Sunrise of Stamford's quality assurance committee, and the quality assurance committee falls within the definition of a peer review committee. Thus, according to the defendants, the reports and investigations are "documents of medical peer review committees" and are deemed "confidential and immune from discovery[.]" (Def. Response at 11). The peer review exemption, however, "relates only to 'the proceedings of a medical review committee conducting a peer review' not to all activities conducted by a medical review committee." *Babcock*, 251 Conn. at 827 (quoting CONN. GEN. STAT. § 19a-17b). This narrow definition of the exemption is important because any "evidence of a practitioner's negligence is immune from discovery only to the extent that it is disclosed solely during the course of peer review." *Babcock*, 251 Conn. at 826 (emphasis added).

The defendants claim that the "creation of the internal incident reports and internal investigation report was for review by the quality assurance committee in order to improve the quality of the care provided by the assisted living services agency." (Def. Response at 12). The defendants offer, upon request of the Court, but have not submitted, an affidavit "substantiating the claim of privilege for the incident reports, general liability report form, and internal investigation." (*Id.*). On or before February 13, 2020, the defendants shall submit an affidavit, along with copies of the five withheld documents that they assert are immune from discovery by the peer review privilege, for the Court's *in camera* review.[8]

III.   CONCLUSION

---

[8] Defense counsel shall contact Chambers for instructions on the form of submission of these *in camera* documents.

Accordingly, as detailed above, the Court grants in part and denies in part the plaintiff's and the defendants' discovery requests set forth in their extensive letter briefing. (Doc. Nos. 97-98, 104-05, 113-15). The lengthy additional briefing that has occurred in this case, including the briefs filed yesterday (Doc. Nos. 119-20), reflects counsel's inability to meet and confer in a productive manner. The parties are directed to address outstanding discovery in a cooperative manner. If additional disputes arise, the parties shall contact Chambers for a telephonic discovery conference before filing additional briefing.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 30th day of January, 2020.

      /s/ Robert M. Spector
Robert M. Spector
United States Magistrate Judge