UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DORINA SCHACHTER and THEODORE
SCHACHTER,
    *Plaintiffs*,

v.

SUNRISE SENIOR LIVING
MANAGEMENT, INC. *et al.*,
    *Defendants*.

No. 3:18-cv-00953 (JAM)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

This case involves claims arising from a very unfortunate injury and cognitive decline of an elderly resident while she resided at Sunrise Senior Living facility in Stamford, Connecticut. Following my denial of an earlier motion to dismiss, *see Schachter v. Sunrise Senior Living Mgmt., Inc.*, 2019 WL 1014852 (D. Conn. 2019), plaintiffs have filed an amended complaint, and the defendants in turn have moved again pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss some of plaintiffs' claims. I will grant in part and deny in part the motion to dismiss.

**BACKGROUND**

The amended complaint alleges the following facts, which I accept as true for the purposes of defendants' motion to dismiss. Sunrise Senior Living facility ("Sunrise") in Stamford, Connecticut, is marketed as a secure, pleasant environment for seniors who can no longer or prefer not to live independently. Doc. #62 at 5-6 (¶¶ 22-26). Relying on representations made by Sunrise executive director Jaclyn Robbins and in their contractual agreements with Sunrise, Dorina Schachter and her son Theodore Schachter decided the facility could provide her continued independence, safety, and support after her husband died in 2015. *Id.* at 6-9 (¶¶ 27-28, 33-43).

1

Theodore Schachter signed a "Residency Agreement" as the "responsible party" on behalf of Mrs. Schacter to live at the Sunrise facility. Doc. #62-1 at 19, 25, 28, 30, 33. The named parties to the Residency Agreement are Mrs. Schachter and "AL I/Stamford Senior Housing, L.L.C. ('Owner') acting through its manager, Sunrise Senior Living Management, Inc. ('Sunrise') d/b/a Sunrise of Stamford (the 'Community')." *Id.* at 3. The Residency Agreement is also signed by Jaclyn Robbins as "Manager for Owner" and "Executive Director" of Sunrise of Stamford. *Id.* at 19, 32.

Mrs. Schachter started living at Sunrise in March 2016. *Id.* at 9 (¶ 44). At the time she moved in, she was coherent, functional, and social. *Id.* at 6-7 (¶¶ 29-32), 9-10 (¶ 45). In June 2016, Robbins told Theodore Schachter that his mother had to be moved to the higher-rent "Dementia Floor" in the facility's "Reminiscence Neighborhood." *Id.* at 10 (¶¶ 46-47), 13 (¶¶ 62, 65). But when he threatened to pull Mrs. Schachter out of Sunrise, Robbins backed down. *Id.* at 10-11 (¶¶ 48-51).

In December 2016, Robbins renewed her push to move Mrs. Schachter to the Dementia Floor, saying she had been found wandering and needed greater supervision. *Id.* at 11-12 (¶¶ 52-58). The move was not based on an assessment by a medical professional, *id.* at 13 (¶¶ 60-61), as required by one of the contracts the Schachters signed, Doc. #62-1 at 46. This time, Theodore Schachter conceded, and Mrs. Schachter moved onto the Dementia Floor on January 1, 2017. Doc. #62 at 13 (¶¶ 59, 64).

On January 14, 2017, Theodore Schachter took his mother out for lunch, and she seemed fine. *Id.* at 14-15 (¶¶ 74-77). But on January 25, she developed a fever, and on the morning of January 26, Theodore Schachter received a call from a Sunrise nurse who told him that his mother had been found "sleeping" on the floor of her room with "rug burn" on her head. *Id.* at

15-16 (¶¶ 79, 83, 86-88). She had potentially been on the floor for more than 19 hours. *Id.* at 16 (¶¶ 84-85).

Three hours after ignoring Theodore Schachter's demands that his mother be sent to the emergency room, the facility finally called an ambulance, and even then only told the emergency medical technicians that Mrs. Schachter had a fever. *Id.* at 16 (¶ 89), 17 (¶¶ 93-94), 19 (¶ 101). Theodore Schachter went to the hospital and found his mother with numerous bruises on her body and an abrasion on her head. *Id.* at 18-19 (¶¶ 97, 99-100). The hospital social worker was concerned enough by the injuries to contact Connecticut's Protective Services for the Elderly, which opened an investigation into the incident. *Id.* at 20 (¶¶ 106-07).

While Mrs. Schachter was on the Dementia Floor, staff were required to monitor her "often," and she was contractually entitled to additional monitoring services, an emergency call system, and safety lighting in her apartment; she received none of these things and even slept in a bed without a half-guard rail. *Id.* at 13-15 (¶¶ 66-73, 78, 80-82). Since the incident, Mrs. Schachter has not been the same; she can only speak gibberish, is wheelchair-bound, and has lost all ability to live independently and enjoy her usual hobbies. *Id.* at 19-22 (¶¶ 104, 110-14).

Mrs. Schachter and Theodore Schachter as her agent have filed this lawsuit against the following defendants:

- Sunrise Senior Living Management, Inc. ("SSLMI");
- Sunrise Senior Living Services, Inc. ("SSLSI");
- AL I/Stamford Senior Housing, LLC ("AL"), acting through its manager SSLMI, d/b/a Sunrise of Stamford;
- Welltower, Inc. ("Welltower"); and
- Jaclyn Robbins; and
- "John Doe" and "Jane Doe" and "Entity Doe" defendants.

According to the amended complaint, at all relevant times, SSLSI "d[id] business as" the assisted living facility in question in Stamford, which was run by Robbins as executive director and

managed from Virginia by SSLMI on behalf of its owner AL. *Id.* at 2-4 (¶¶ 5-12, 19-20). Welltower is allegedly a shareholder of SSLMI. *Id.* at 3-4 (¶¶ 13-17).

The complaint confusingly uses the term "Sunrise Defendants" but without specifying which defendants constitute the "Sunrise Defendants." As best as I can tell, the "Sunrise defendants" include all the company defendants except for Welltower. *See, e.g.*, *id.* at 12 (¶ 54) (allegation of complaint referencing "Welltower" and "Ms. Robbins" as distinct from the "Sunrise Defendants").

This case was initially filed in state court in Queens, New York, before it was removed to the Eastern District of New York, and then transferred *sua sponte* pursuant to 28 U.S.C. § 1404(a) to the District of Connecticut. Doc. #17. After the case was transferred, this Court granted plaintiffs' motion to amend their complaint. Doc. #61.

Counts One and Two of the amended complaint allege a claim against all defendants for negligence. Doc. #62 at 22-26 (¶¶ 120-32).[1] Count Three alleges a claim against all defendants for negligent infliction of emotional distress. *Id.* at 26-28 (¶¶ 133-40). Count Four alleges a claim against the Sunrise defendants for intentional infliction of emotional distress. *Id.* at 28-33 (¶¶ 141-60); Doc. #77 at 5 (withdrawing this claim against Robbins and Welltower). Count Five alleges a claim against the Sunrise defendants for breach of contract and breach of the implied covenant of good faith and fair dealing. Doc. #62 at 33-35 (¶¶ 161-69). Count Six alleges a claim against all defendants for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b. *Id.* at 35-40 (¶¶ 170-88). Count Seven alleges a claim against all defendants for violation of the Patients' Bill of Rights, Conn. Gen. Stat. § 19a-550. *Id.* at 40-41

---

[1] Count One alleges negligence against all the named defendants, while Count Two alleges negligence against a range of "Doe" defendants. Until such time that plaintiffs choose to identify any of the Doe defendants, I will not refer to or consider any of plaintiffs' claims against the Doe defendants.

4

(¶¶ 189-95). Count Eight alleges a claim against the Sunrise defendants and Robbins for willful and/or reckless disregard for Mrs. Schachter's safety and rights. *Id.* at 42 (¶¶ 196-99). Defendants now move to dismiss on several grounds pursuant to Fed. R. Civ. P. 12(b)(6). Doc. #65.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). The "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court need not accept allegations that couch legal conclusions in the form of factual allegations or that are otherwise conclusory. *See Hernandez*, 939 F.3d at 198. In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—states enough facts to establish a facially plausible claim for relief.

*Choice of law*

As a general rule, when there is a change of venue by means of a transfer from one federal court to another federal court pursuant to 28 U.S.C. § 1404(a), a transferee court sitting in diversity applies the law of the transferor state if the transferor state could have properly exercised jurisdiction over the case. *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635-39 (1964)). Because this diversity action was transferred from the Eastern District of New York to the District of Connecticut pursuant to

5

section 1404(a) and because it is not disputed that jurisdiction in the Eastern District of New York would have been proper, I must apply New York law.

Still, when applying New York law, I must also consider the fact that some of the parties have signed a contract—the Residency Agreement—which selects Connecticut law to "govern[]" claims "arising from" the contract. Doc. #62-1 at 15. Under New York law, this clause applies only to the parties' contract-based claims rather than to all claims and disputes between them, including the applicable statute of limitations. *See Heskiaoff v. Sling Media*, Inc., 719 F. App'x 28, 31 (2d Cir. 2017) ("limited choice-of-law clauses . . . merely specify the law that applies to claims *arising from the contract* but not to non-contractual claims (e.g., consumer protection statutes sounding in fraud)"); *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005) (contractual language that "*[t]his Agreement* will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine)" is "not broad enough to reach tort claims incident to the contractual relationship"); *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416 (N.Y. 2010) ("Choice of law provisions typically apply to only substantive issues, and statutes of limitations are considered 'procedural'"). Thus, in accordance with the Residency Agreement's choice of law clause, Connecticut law applies to the plaintiffs' contract claims as alleged in Count Five of the amended complaint.

But the choice of law clause does not dictate what law applies to plaintiffs' remaining claims, and the law that applies to these claims must instead be determined by reference to New York's general choice of law principles. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153-54 (2d Cir. 2013) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990)). For the remaining common law tort claims, New York choice of law principles generally defer to the

6

place where the allegedly wrongful conduct and injury occurred. *See Wu v. Stomber*, 750 F.3d 944, 949-50 (D.C. Cir. 2014) (Kavanaugh, J.) (applying New York choice of law); *El-Hanafi v. United States*, 40 F. Supp. 3d 358, 366 (S.D.N.Y. 2014). Likewise, for the statutory consumer protection claims, New York choice of law principles generally defer to the place where the alleged deception or wrongful conduct occurred. *See In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139, 148 (S.D.N.Y. 2008); *In re Rezulin Prod. Liab. Litig.*, 390 F. Supp. 2d 319, 335 (S.D.N.Y. 2005). All these rules point to application of the law of Connecticut for plaintiffs' remaining claims—the place where the allegedly deceptive conduct and injury occurred at or near the Sunrise facility in Stamford.

Having now identified the applicable law, I turn to address each of the defendants' numerous arguments for dismissal. First, they argue that the statute of limitations bars all claims against Robbins and Welltower. Doc. #65-1 at 4-8. Second, they argue that the amended complaint fails to state a claim against Welltower. *Id.* at 9-13. Third, they argue that the amended complaint fails to state a claim against defendant SSLSI. *Id.* at 13-14. Fourth, they argue that the amended complaint fails to state a claim against Robbins. *Id.* at 14-16. Fifth, they argue that the contract claims against Robbins and Welltower must be dismissed because they are not parties to the Residency Agreement. *Id.* at 16-17.[2] Lastly, they argue that the amended complaint fails to state a claim for a violation of CUTPA and the Patients' Bill of Rights. *Id.* at 17-21. I will consider each of these arguments in turn.

---

[2] Defendants confusingly label this argument's header as having to do with a statute of limitations when in fact they argue that neither Robbins nor Welltower are named parties to the contract and therefore cannot be liable for breach of contract. To make matters worse, defendants then repeat the same contract argument under a separate argument header on the last page of their brief. Doc. #65-1 at 22.

*Statute of limitations as to Robbins and Welltower*

Defendants argue that the applicable statute of limitations bars all claims against Robbins and Welltower. New York has a borrowing statute, N.Y. C.P.L.R. 202, which distinguishes between claims brought by New York residents and claims brought by nonresidents. The borrowing statute requires that nonresidents who sue on a cause of action that arose outside New York be timely under *both* New York law and the law of the jurisdiction where the cause of action accrued. *See 2138747 Ontario, Inc. v. Samsung C & T Corp.*, 31 N.Y. 3d 372, 376-77 (2018); *Thea v. Kleinhandler*, 807 F.3d 492, 497-98 (2d Cir. 2015).

The prerequisites for application of the New York borrowing statute exist here. First, all the claims against Robbins and Welltower arose outside of New York, from events at the Sunrise facility in Stamford, Connecticut. Second, despite the fact that the complaint conclusorily alleges that Mrs. Schachter was a resident of New York, Doc. #62 at 2 (¶ 3), this allegation cannot be reconciled with the remaining allegations of the complaint establishing that she resided at the Sunrise facility in Connecticut since March 2016 and through the time of her alleged mistreatment by the defendants. Indeed, Mrs. Schachter entered into the Residency Agreement in order for her to live at the Sunrise facility in Connecticut, Doc. #62-1, and the amended complaint alleges she was a "contractual resident" of Sunrise "at all relevant times," Doc. #62 at 2 (¶ 3). Immediately after her discharge from the hospital, Mrs. Schachter moved into another assisted living facility in Stamford, Docs. #80-2, 80-4, and continued to live there as of July 2019, Doc. #80-3—all of which suggests her Connecticut residence.

Therefore, in accordance with the New York borrowing statute, all plaintiffs' claims against Robbins and Welltower must survive *both* New York and Connecticut's statutes of limitations. Under New York law, the limitations periods for plaintiffs' claims are as follows:

three years for personal injury and statutory liability claims, *see* N.Y. C.P.L.R. 214, and six years for breach of express or implied contract claims, *see* N.Y. C.P.L.R. 213. Under Connecticut law, the limitations periods for plaintiffs' claims are: two years for personal-injury negligence and reckless conduct claims, *see* Conn. Gen. Stat. § 52-584; three years for tort claims, *see* Conn. Gen. Stat. § 52-577; three years for CUTPA claims, *see* Conn. Gen. Stat. § 42-110g(f); three years for oral contract claims, *see* Conn. Gen. Stat. § 52-581; and six years for implied or written contract claims, *see* Conn. Gen. Stat. § 52-576.

Plaintiffs' causes of action all accrued by late January 2017 when Mrs. Schachter experienced her fall and hospitalization that are the focus of this lawsuit. Plaintiffs, however, did not move to amend the complaint to join Robbins and Welltower as defendants until more than two years later in March 2019. Thus, the CUTPA claims against Robbins and Welltower satisfy the limitations periods in both jurisdictions, but all the remaining claims against Robbins and Welltower for negligence, negligent infliction of emotional distress, and reckless conduct fall outside Connecticut's two-year statute of limitations for such claims. Plaintiffs make no argument why the Connecticut statute of limitations for these claims should be tolled or why the claims against Robbins or Welltower should "relate back" to the original complaint filed against the other defendants. *See* Fed. R. Civ. P. 15(c)(1). Accordingly, I will grant the motion to dismiss with prejudice plaintiffs' claims against Robbins and Welltower for negligence (Count One), for negligent infliction of emotional distress (Count Three), and for reckless conduct (Count Eight).[3]

---

[3] It is not clear what statute of limitations applies to plaintiffs' claim (Count Seven) against all defendants for a violation of the Patients' Bill of Rights, Conn Gen. Stat. § 19a-550(e). *See Clemente v. Cedar Lane Rehab. & Health Care Ctr., LLC*, 2010 WL 1050428, at *5 (Conn. Super. Ct. 2010) (discussing but not deciding whether claim for violation of section 19a-550(e) is subject to a two-year or three-year statute of limitations). But I need not resolve this issue as to Robbins and Welltower, because the statute by its terms allows for a cause of action only against a "nursing home facility, residential care home or chronic disease hospital," and neither Robbins nor Welltower are arguably within this class of potential defendants subject to suit under section 19a-550(e). *See Burr Rd. Operating Co. II, LLC v. New England Health Care Employees Union, Dist. 1199*, 316 Conn. 618, 641-42 (2015) ("Notably, the patients' bill of rights does not provide for any particular penalty for offending nursing home employees.")

But all other claims against all other defendants are timely filed under the applicable New York and Connecticut statutes of limitations.

*Failure to state a claim against Welltower*

In light of my statute of limitations ruling above dismissing most of the claims against Welltower, the only remaining non-time-barred claim against Welltower is for a violation of CUTPA. CUTPA prohibits the use of "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a); *Richards v. Direct Energy Services, LLC*, 915 F.3d 88, 100 (2d Cir. 2019). The statute "provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 351 (2010).

In determining whether alleged misconduct violates CUTPA, courts must first consider whether the act "occurred in the conduct of trade or commerce." *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 788 (2019). Next, a court must consider whether the act involves "an actual deceptive practice" or "a practice amouting to a violation of public policy." *Id.* at 790 (internal quotations omitted). "[U]nder CUTPA, only intentional, reckless, unethical or unscrupulous conduct can form the basis for a claim." *Id.* at 791.

The complaint's only allegation of wrongdoing against Welltower is that it "controlled and influenced Sunrise Defendants actions through monetary and other incentives designed to cause them to cut corners, short change and mistreat the senior citizen residents." Doc. #62 at 39 (¶ 186). This single allegation is the epitome of a threadbare and conclusory allegation that may not survive a motion to dismiss. It does not allege sufficient facts (as distinct from conclusory

---

Accordingly, I will dismiss plaintiffs' claims under section 19a-550(e) with prejudice against Robbins and Welltower.

10

and opinion-laden terms such as "cut corners" and "short change") that suffice to establish plausible grounds for relief against Welltower. It does nothing to describe the alleged "monetary and other incentives," much less to plausibly allege that any such incentives were "designed" to cause the Sunrise defendants to engage in deceptive or unfair business practices.

The complaint otherwise accuses Welltower and other defendants of trying "to drive up profits." Doc. #62 at 12 (¶ 54). Alas, "Connecticut law is clear that widespread business practices that are consistent with 'common business norms' do not violate CUTPA." *Richards*, 915 F.3d at 104. For that reason, a company's policies that are designed in general to maximize revenues, to economize on costs, and to deliver goods or services efficiently do not amount to a deceptive or unfair business practice. If a company were guilty of unfair trade practices solely because it wished to earn (or "drive up") profits, then there would be no end to rapacious CUTPA claims by opportunistic plaintiffs whose only claim of entitlement would be to profit from the very fact that the defendants profited.

Nor can Welltower be held responsible in *respondeat superior* or in its capacity as a mere owner or shareholder of any of the Sunrise defendants. It is a basic principle of corporate law that a corporate parent or shareholder is not liable for the acts of the corporate entity that it owns absent extenuating facts that would warrant "piercing the corporate veil" to hold the owner or shareholder liable. *See, e.g.*, *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 231-32 (2010); *SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220, 232 (1991). "Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Naples*, 295 Conn. at 233.[4]

---

[4] Although Welltower is incorporated in Delaware and New York choice of law principles suggest that the issue of veil-piercing should be judged by reference to the law of the state of incorporation, *see, e.g*, *Fletcher v. Atex, Inc.*,

The amended complaint comes nowhere near to alleging sufficient facts to plausibly conclude that Welltower has improperly controlled and dominated the Sunrise defendants so as to allow for piercing of the corporate veil. Nor do any of the snippets of sundry SEC filings quoted by plaintiffs show facts that would warrant piercing of the corporate veil and to make up for the paucity of allegations in the complaint. *See, e.g.*, *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15-16 (2d Cir. 2014) (conclusory allegations insufficient to pierce corporate veil); *Pressman v. Purcell*, 2018 WL 6069099, at *4 (D. Conn. 2018) (same). Accordingly, I will dismiss the CUTPA claim against Welltower without prejudice to re-pleading in the event that plaintiffs in good faith can satisfy the requisite standards to establish Welltower's liability.

### *Failure to state claim against SSLSI*

Defendants argue that all claims against SSLSI should be dismissed for lack of factual allegations specific to SSLSI. They rely on Rule 8 of the Federal Rules of Civil Procedure, which requires that a defendant be given "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (internal quotations and citation omitted). A complaint does not satisfy Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Ibid.*; *see also Embree v. Wyndham Worldwide Corporation*, 779 Fed. App'x. 658, 661 (11th Cir. 2019) (affirming dismissal of "shotgun pleading" complaint that "pervasively lumped separate companies together in a conclusory fashion, treated separate companies as a single

---

68 F.3d 1451, 1456 (2d Cir. 1995), plaintiffs acknowledge (Doc. #77 at 5) that Delaware law is substantially similar to Connecticut law for purposes of determining whether a plaintiff should be permitted to pierce the corporate veil, *see, e.g.*, *Matter of Sims*, 994 F.2d 210, 218 n.11 (5th Cir. 1993).

entity without explanation, and failed to differentiate the allegations against each defendant so that each could identify its allegedly improper conduct").

The only allegation against SSLSI is that it "d[id] business as" the assisted living facility at the center of this case. Doc. #62 at 2 (¶ 6). The amended complaint otherwise indiscriminately lumps SSLSI together with all the Sunrise defendants, *id.* at 4 (¶ 18), despite the absence of SSLSI as a named party to the Residency Agreement. Indeed, in their opposition to the motion to dismiss, plaintiffs do not even bother to respond to defendants' argument that the allegations against SSLSI are legally insufficient. Accordingly, because plaintiffs do not attempt to defend the propriety of naming SSLSI as a defendant in this action, I will grant the motion to dismiss with prejudice as to all claims against SSLSI.

### *Vicarious liability against Robbins*

Defendants argue that Robbins cannot be held vicariously liable for any negligent acts of Sunrise staff that led to Mrs. Schachter's injuries. Because I have already dismissed the negligence claims against Robbins as time-barred under the statute of limitations, this argument is moot and need not be further addressed at this time. And to the extent that there is a CUTPA claim outstanding against Robbins, this claim does not rely on allegations that Robbins negligently supervised her employees.

### *Breach of contract claims against non-signatories to Residency Agreement*

Defendants argue that any claims for breach of contract and the related breach of the implied covenant of good faith and fair dealing against Welltower, SSLSI, and Robbins should be dismissed because they were not parties to the Residency Agreement. Although Robbins signed the contract, she signed it only on behalf of one or more corporate defendants, and so she cannot be held liable for breach of contract. *See, e.g.*, *Parcel Mgmt. Auditing & Consulting, Inc.*

*v. Dooney & Bourke, Inc.*, 2015 WL 796851, at *4 (D. Conn. 2015). Welltower and SSLSI were also non-signatories. I will therefore grant the motion to dismiss to the extent that the complaint could be read to allege any claims for breach of contract and breach of the covenant of good faith and fair dealing against defendants Welltower, SSLSI, and Robbins.

*CUTPA claim*

As I have discussed above, CUTPA generally outlaws deceptive or unfair business practices when used in trade or commerce. But CUTPA is not an all-purpose cause of action for plaintiffs who feel wronged. "Run-of-the-mill statutory violations, torts, and contract breaches do not constitute unfair trade practices." *Richards*, 915 F.3d at 102. A complaint that alleges no more than a simple breach of contract does not allege a valid CUTPA claim absent additional allegations of significant aggravating circumstances. *See Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1039-1040 (2d Cir. 1995).

Likewise, allegations of medical negligence or malpractice do not ordinarily suffice to allege a CUTPA claim. *See Janusauskas v. Fichman*, 264 Conn. 796, 809 (2003). A valid CUTPA claim against a health care provider requires "an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competence or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel." *Ibid.* (internal quotations and citation omitted).

Plaintiffs mostly ignore all this when pleading their CUTPA claim, instead largely repeating their allegations about how one or more of the defendants allegedly breached a contract and engaged in medical malpractice. Still, within the jumble of plaintiffs' CUTPA allegations, it is possible to tease out one strand that appears to satisfy the requisites to state a CUTPA claim. Specifically, plaintiffs allege that the Sunrise defendants and Robbins pressured plaintiffs to have

Mrs. Schachter moved to the Dementia Floor for improper business purposes and as part of a fraudulent scheme to induce residents into contracting for a higher-priced service that the Sunrise defendants and Robbins knew was not higher quality—in particular, that they knew that the staff were not capable of dealing with residents suffering from dementia. Doc. #62 at 37-38 (¶¶ 177-182); *cf. Ferrigno v. Pep Boys*, 47 Conn. Supp. 580, 583 (Super. Ct. 2003) ("bait-and-switch" tactics violate CUTPA, but "unworkmanlike performance of a contract" does not). At least for initial pleading purposes, the complaint alleges enough—even if barely and inartfully—to state a CUTPA claim against the remaining Sunrise defendants—SSLMI and AL—and Robbins. Accordingly, I will deny the motion to dismiss as to plaintiffs' CUTPA claim.[5]

### *Claim under the Patients' Bill of Rights*

Defendants argue that the Sunrise facility does not come within the scope of parties who may be sued for a violation of the Connecticut Patients' Bill of Rights. *See* Conn. Gen. Stat. § 19a-550(e) ("Any nursing home facility, residential care home or chronic disease hospital that negligently deprives a patient of any right or benefit created or established for the well-being of the patient by the provisions of this section shall be liable to such patient in a private cause of action for injuries suffered as a result of such deprivation.").

Plaintiffs counter that the Sunrise facility is within the scope of facilities under the section 19a-550(e) because "Sunrise provides various tiers of accommodations and supervision to its residents, including an Alzheimer's special care unit/program," and that this type of program is defined under Connecticut law to mean "'a nursing facility, residential care home,

---

[5] Because defendants do not raise the argument, there are no grounds for me to consider at this stage of the litigation whether a corporate employee like Robbins may be individually liable under CUTPA for the deceptive or unfair business practices of the company for which the employee works. *See, e.g.*, *Bridgeport Harbor Place I, LLC v. Ganim*, 2007 WL 2938353, at *1 (Conn. Super. Ct. 2007) ("an individual who is merely functioning as an employee, officer or director of a corporation is not involved in conduct that constitutes a trade or commerce within the contemplation of CUTPA"). *But see In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 141-44 (D. Conn. 2014) (concluding that a defendant may be liable for aiding-and-abetting under CUTPA).

15

assisted living facility . . . that locks, secures, segregates, or provides a special program or unit for residents diagnosed with a diagnosis of probable Alzheimer's disease, dementia, or similar disorder . . . .'" Doc. #62 at 5 (¶ 24) (quoting Conn. Gen. Stat. § 19a-562(a)).

I conclude for initial pleading purposes that the amended complaint plausibly alleges enough facts to suggest that Sunrise is a facility within the scope of section 19a-550(e). To the extent that defendants claim that their formal licensure controls whether they qualify as an institution subject to section 19a-550(e), their licensure is an evidentiary matter that the Court cannot consider and rely on at the initial pleading stage when evaluating a motion to dismiss pursuant to Rule 12(b)(6). More generally, the Court cannot otherwise determine without factual evidence whether the Sunrise facility qualifies in whole or in part as a facility within the scope of section 19a-550(e). Accordingly, I will deny the motion to dismiss plaintiffs' claim against SSMLI and AL for a violation of the Connecticut Patients' Bill of Rights, Conn. Gen. Stat. § 19a-550(e).

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part defendants' motion to dismiss. The Court GRANTS the motion to dismiss as to all claims against Welltower, Inc.; as to all claims against Sunrise Senior Living Services, Inc.; and as to all claims against Jaclyn Robbins except for the CUTPA claim (Count Six). The Court otherwise DENIES the motion to dismiss.

In light of this ruling, this action shall proceed against defendant Sunrise Senior Living Management, Inc. and defendant AL I/Stamford Senior Housing, LLC as to the following counts: Count One (negligence), Count Three (negligent infliction of emotional distress), Count Four (intentional infliction of emotional distress), Count Five (breach of contract and breach of

16

the implied covenant of good faith and fair dealing), Count Six (CUTPA), Count Seven (Patients' Bill of Rights), and Count Eight (willful/reckless disregard for Mrs. Schachter's safety and rights). This action shall also proceed against defendant Jaclyn Robbins on Count Six (CUTPA). The Clerk of Court shall terminate defendants Welltower, Inc. and Sunrise Senior Living Services, Inc. as defendants in this action.

It is so ordered.

Dated at New Haven this 16th day of March 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge